IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALPHONSO SLOAN, )<br>      Petitioner, )<br>)<br>v. )<br>)<br>)<br>UNITED STATES OF AMERICA, )<br>      Respondent. ) | Civil No. 05-302<br>(Criminal No. 03-72) |

MEMORANDUM OPINION

CONTI, District Judge.

Pending before the court is a motion to vacate, set aside, or correct sentence by a person in federal custody pursuant to 28 U.S.C. § 2255 ("petitioner's motion") (Doc. No. 427) filed by petitioner Alphonso Sloan ("petitioner"). Upon reviewing petitioner's motion and the government's brief in opposition (Doc. No. 451), the court will deny petitioner's motion for the reasons set forth herein.

**I. Background**

On February 18, 2003, a federal grand jury returned a nineteen-count indictment charging several individuals with various drug-trafficking and firearms charges. Petitioner was charged with conspiracy to distribute and possess with the intent to distribute one hundred (100) grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, from on or about November 20, 2002 and continuing thereafter to on or about February 8, 2003, in violation of 21 U.S.C. §§ 846, 841(a)(1) and

1

841(b)(1)(B)(i) (Count Six) and with possession with the intent to distribute less than one hundred (100) grams of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, on or about January 8, 2003 (Count Eleven).  (Doc. No. 1).

On October 21, 2003, petitioner entered a plea of guilty to the conspiracy charge (Count Six).  (Doc. No. 228).   On March 19, 2004, petitioner was sentenced to imprisonment for a term of 63 months to be followed by supervised release for a term of 4 years.  (Doc. No. 289). Although petitioner did not appeal his sentence, "there is no procedural default for failure to raise an ineffective assistance claim on direct appeal."  Massaro v. United States, 538 U.S. 500, 503-04 (2003).[1]

On or about March 7, 2005, the clerk of court received and filed petitioner's motion to vacate, set aside, or correct sentence by a person in federal custody pursuant to 28 U.S.C. § 2255 (Doc. No. 427).  In his motion, petitioner lists two grounds for his claim that he is being held in violation of the Constitution, laws or treaties of the United States and his prayer for relief that the court vacate, set aside, or correct his sentence.  Specifically, petitioner alleges (1) ineffective assistance of counsel in violation of the Sixth Amendment based upon counsel's failure to make arguments on petitioner's behalf at sentencing pursuant to U.S.S.G. §§ 5G1.3 (undischarged term of imprisonment) and 3B1.2 (minor role); and (2) deprivation of civil rights

---

[1]The Supreme Court in Massaro held that ineffective assistance of counsel claims may be collaterally reviewed even when those claims were not raised on direct appeal.  Thus, a claim based upon ineffective assistance of counsel is an exception to the general rule that only claims raised on direct appeal may be raised on collateral review absent a showing of cause and prejudice.  See Massaro, 538 U.S. 504 (citing United States v. Frady, 456 U.S. 152, 167-68 (1982); Bousley v. United States, 523 U.S. 614, 621- 22 (1998)).  "The procedural default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments."  Id.

protections and guarantees under the Fourteenth Amendment Equal Protection Clause and Due Process Clause based upon counsel's failure to consult with petitioner concerning these arguments notwithstanding his Sixth Amendment rights.

On April 11, 2005, the court issued a notice that the motion to vacate had been filed and directed the government to file its response and a brief in opposition on or before April 22, 2005 (Doc. No. 440). On April 22, 2005, the government filed its response in opposition. (Doc. No. 451).

**II. Standard of Review**

A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to 28 U.S.C. § 2255 unless the motion and files and records of the case show conclusively that the movant is not entitled to relief. 28 U.S.C. § 2255 ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005). For reasons set forth herein, and based upon the motion and files and records of the case, the court determines that petitioner's motion shall be denied without a hearing because the motion and files and records of the case show conclusively that the movant is not entitled to relief.

Under 28 U.S.C. § 2255, a federal prisoner in custody may move the court which imposed the sentence to vacate, set aside or correct the sentence upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the

court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." The Supreme Court read the statute as stating four grounds upon which relief can be granted:

> (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence "is otherwise subject to collateral attack."

CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 593 (3d ed. 2004) (quoting Hill v. United States, 368 U.S. 424, 426-27 (1962)). The statute provides as a remedy for a sentence imposed in violation of law that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255.

### III. Analysis

#### A. Ineffective Assistance of Counsel Claims

To establish ineffective assistance of counsel in violation of the Sixth Amendment, petitioner must prove (1) deficient representation, meaning that counsel's representation fell below an objective standard of reasonableness; and (2) prejudice, meaning that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Williams v. Taylor, 529 U.S. 362, 390-91 (2000); Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). Concerning the prejudice prong, a "reasonable probability" is a probability sufficient to undermine confidence in the outcome." Williams, 529 U.S. at 390-91. In the case of ineffective assistance at sentencing, prejudice is established if the

movant demonstrates that his sentence was increased by the deficient performance of his attorney. Glover v. United States, 531 U.S. 198, 200, 203-04 (2001). That is, a movant arguing ineffective assistance at sentencing must show that counsel's deficiencies at sentencing created a reasonable probability that, but for the deficient performance, his sentence would have been less harsh. See id. at 200.

The United States Court of Appeals for the Third Circuit directed courts to address the prejudice prong of the analysis first. See McAleese v. Mazurkiewicz, 1 F.3d 159, 170 (3d Cir.), cert. denied, 510 U.S. 1028 (1993) ("Indeed, this Court has read Strickland as requiring the courts to decide first whether the assumed deficient conduct of counsel prejudiced the defendant.") (internal quotations and citations omitted). The court of appeals in McAleese noted that Strickland itself recognized that

> a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

466 U.S. at 697.

The court, therefore, will examine the prejudice prong of the Strickland analysis before considering the deficient representation prong.

### *1) U.S.S.G. § 5G1.3*

First, petitioner argues that at sentencing his counsel should have made an argument that, pursuant to U.S.S.G. § 5G1.3, petitioner's federal sentence should be imposed to run concurrently with any sentence imposed for his then-pending state drug charges which were

5

described in paragraphs 49 and 50 of petitioner's Presentence Investigative Report ("PIR"). These drug charges were based upon arrests by the Pittsburgh Police on March 18, 2002 and February 15, 2003. According to the PIR, prepared December 4, 2003, a trial date for these charges was set for January 28, 2004 "pending federal sentencing." At the time of sentencing, therefore, the record indicates that petitioner had yet to be convicted, let alone sentenced, for these charges.

Section 5G1.3 addresses imposition of a sentence on a defendant subject to an undischarged term of imprisonment. Section 5G1.3 ("Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment) (2004 ed.) provides in full that:

> (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.
>
> (b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments),
> the sentence for the instant offense shall be imposed as follows:
>> (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>> (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.
>
> (c) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run

>concurrently, partially concurrently, or consecutively to the prior
>undischarged term of imprisonment to achieve a reasonable punishment
>for the instant offense.

U.S.S.G. § 5G1.3. Here, subsections 5G1.3(a), (b) and (c) do not apply because petitioner had yet to be convicted or sentenced for these state charges, and therefore was not yet serving a "term of imprisonment" for these charges, at the time of federal sentencing. Petitioner, therefore, could not show an "undischarged term of imprisonment" based upon these charges at the time of federal sentencing which this court could have considered. U.S.S.G. section 5G1.3, thus, does not apply.

Moreover, as noted by the government, there is a split among the United States Courts of Appeals as to whether a federal district court may order a sentence to run consecutively or concurrently to a yet-to-be imposed state court sentence. See United States v. Randolph, 80 Fed. Appx. 190, 193 (3d Cir. 2003) (collecting cases). In Randolph, the United States Court of Appeals for the Third Circuit analyzed this question in light of 18 U.S.C. § 3584, the statutory authority addressing multiple sentences of imprisonment, as well as section 5G1.3 of the Guidelines. Like the applicable guidelines section, section 5G1.3, the provisions of section 3584 address sentencing of a defendant "who is *already* subject to an *undischarged term of imprisonment*." 18 U.S.C. § 3584 (emphasis added).

The defendant in Randolph faced federal sentencing *after* a previous state conviction and sentence. Randolph, 80 Fed. Appx. at 191-92. The court of appeals addressed the question whether the district court committed plain error in ordering the federal sentence to run consecutively with any time imposed by the state *in the future* because at the time of federal sentencing the defendant in Randolph had yet to be fully assessed the state penalties associated

7

with the parole violation which led to the federal charges. Id. at 192. The court of appeals noted that there is a split among the United States Courts of Appeals regarding whether a federal district court may order a sentence to run consecutively or concurrently to a yet-to-be imposed state court sentence. Pursuant to section 5G1.3 of the guidelines, and in particular, Application Note 6 of the 2001 version of the guidelines, the court of appeals noted that if a defendant is on federal or state probation, parole, or supervised release at the time of the instant offense, and had the probation, parole, or supervised release revoked, the sentence for the instant federal offense should be imposed to run consecutively to the term imposed for the violation in order to provide an incremental penalty for the violation. Id. at 195 (citing U.S.S.G. § 5G1.3, Application Note 6 (2001)). This guidance is now set forth in Application Note 3(C) of the 2005 version of the guidelines.

The court of appeals in Randolph reasoned that, because the guidance in Application Note 6 of the relevant edition of the guidelines "is not forward looking, it is questionable whether it gave the district court the authority to order [defendant] to serve the sentence it imposed consecutively to any additional time the parole board thereafter might impose." Id. (citations omitted). The court of appeals remarked that notwithstanding certain authority, "it may not be possible to justify the district court's sentence under U.S.S.G. § 5G1.3 on the theory that the state court had imposed the six-month state term earlier" and "[a]ccordingly, it might be thought that we would have to address the conflict among the courts of appeals . . . as to whether a district court may order a sentence to run consecutively to a not yet court-imposed state sentence." Id. The court of appeals, however, determined that it did not need to reach the issue. "The division of opinion . . . is illusory because of the last sentence in section 3484(a), which states that

8

'[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.'" Id. (citing Romandine v. United States, 206 F.3d 731 (7th Cir. 2000)).  The court of appeals in Randolph reasoned that even if the district court had not ordered the defendant in that case to serve his federal and state sentences consecutively, he would have had to do so anyway because they were "unquestionably . . . multiple terms of imprisonment imposed at different times regardless of whether we view the six months as having been imposed by the court before or the parole board after the federal sentencing." Id.

      Here, applying the relevant authority, the court determines that had petitioner's trial counsel made an argument on his behalf pursuant to section 5G1.3 of the guidelines, this court would not have found that defendant was entitled to the downward departure for which he now argues he was entitled.  Although petitioner was detained on state charges at the time of his federal sentencing, petitioner had yet to be convicted, let alone sentenced, for the state charges pending against him.  The court would not have been able, even as a practical matter, to downward depart for the time imposed at those charges because the court, even if it had the authority to do so, would not have known (i) if petitioner would be convicted for those charges, and (ii) if petitioner were convicted, what sentence would be imposed on petitioner at those charges.  Nothing in the applicable statutory or guidelines provisions concerning multiple sentences of imprisonment directly deals with a situation where a conviction and sentence are yet to be imposed.

      There is no authority supporting defendant's view that the court, had defendant's counsel made an argument, would have granted defendant a downward departure for the pending state drug charges for which defendant had yet to be convicted or sentenced.  Petitioner, therefore, was

9

not prejudiced by trial counsel's failure to make an argument on his behalf pursuant to section 5G1.3 of the guidelines.  There is not a reasonable probability that, but for counsel's failure to make an argument pursuant to section 5G1.3, the result of the proceeding would have been different and defendant would have received a less harsh sentence.  See Glover, 531 U.S. at 200, 203-04; Williams, 529 U.S. at 390-91; Strickland, 466 U.S. at 687-88, 694.[2]

### 2. *Minor Role*

Second, petitioner argues that at sentencing his counsel should have made an argument on his behalf that he played a "minor role" in the offense based upon his contention that he was merely a regular customer feeding his own addiction.  This argument, had it been made at sentencing, would have been analyzed by the court in light of U.S.S.G. § 3B1.2 ("Mitigating Role"), which provides for a decreased offense level in situations where a defendant was a "minor participant" (2 levels) or a "minimal participant" (4 levels) in the underlying criminal activity and related precedential authority.

The United States Court of Appeals for the Third Circuit stated that there are two prerequisites for the application of U.S.S.G. § 3B1.2: (1) multiple participants; and (2) a differentiation in levels of culpability.  United States v. Isaza-Zapata, 148 F.3d 236, 239 (3d Cir. 1998).  The defendant bears the burden of demonstrating that the minimal or minor role adjustment is applicable.  Id. at 240.  In assessing whether a mitigating role adjustment is applicable, the court must consider the following factors: (1) the nature of the defendant's

---

[2]In addition, although the court did not downward depart based upon the pending state charges as petitioner argues he is entitled, the court in petitioner's judgment did note in the section reserved for the court's recommendations for the Bureau of Prisons that defendant had been in custody since February of 2003 and that defendant may be given credit for prior custody pursuant to 18 U.S.C. § 3585(b).

relationship to other participants; (2) the importance of the defendant's actions to the success of the venture; and (3) the defendant's awareness of the nature and scope of the criminal enterprise. United States v. Headley, 923 F.2d 1079, 1084 (3d Cir. 1991). With respect to the first factor, the defendant does not need to provide independent evidence to corroborate his account of his relationship to the other participants in the criminal enterprise. United States v. Rodriguez, 342 F.3d 296, 299 (3d Cir. 2003). The court must make an independent factual inquiry regarding the second factor, and must ensure "that an integrality statement [i.e., that *any* action in furtherance of a crime is integral to its success] does not amount to a set policy as to the centrality of [the defendant's] role in the criminal enterprise." Id. at 300.[3]

In Rodriguez, the court of appeals stated that courts should consider additional factors with respect to the mitigating role adjustment in drug courier cases. These considerations include whether the event was a repeated activity or an isolated event; the amount of money the defendant received as an indication of the importance of defendant's action to the success of the venture; and the defendant's likely knowledge of the identities and roles of the other actors in the conspiracy as well as his likely knowledge of the overall scope of the conspiracy. Rodriguez, 342 F.3d at 301.

If the court determines that a mitigating role reduction is applicable, the court must determine if a "minimal" (4-level), "minor" (2-level), or 3-level adjustment is applicable. The application notes to U.S.S.G. § 3B1.2 aid the court in determining which level adjustment is

---

[3] This is particularly apt with respect to drug couriers, as the United States Court of Appeals for the Third Circuit specifically declined to adopt a *per se* rule that drug couriers cannot receive the minor role adjustment. Id. (citing Isaza-Zapata, 148 F.3d at 242).

appropriate.[4] The minimal or minor role adjustment is only applicable to defendants who are "substantially less culpable than average participant." U.S.S.G. § 3B1.2, App. Note 3. The "minimal participant" adjustment should only be given to the least involved member of the conspiracy. United States v. Haut, 107 F.3d 213, 217 (3d Cir. 1997). In Isaza-Zapata, the court of appeals stated with respect to the minimal role adjustment that the court should examine the defendant's lack of knowledge or understanding of the overall enterprise and of the other's activities. Isaza-Zapata, 148 F.3d at 238-39. Thus, for the minimal participant adjustment to be applicable, not only must the defendant be "substantially less culpable" then the other participants, but also among the least culpable involved in the conduct of the group. Application Note 5, regarding the "minor participant" adjustment, states that the minor participant adjustment is to be applied to a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." Id. App. Note 5.

Petitioner's assertion that he played a "minor role" is not supported by the prosecution's summary of the evidence against him set forth on the record at the change of plea hearing before this court on October 21, 2003. See Change of Plea Transcript ("Tr.") at 26-33. (Doc. No. 429). At the change of plea hearing, while under oath, petitioner testified that he agreed with the prosecution's summary of the evidence against him. (Tr. at 33.) The prosecution stated that the charges against petitioner were the result of a multi-agency investigation of the Michael Good trafficking organization. (Tr. at 27.) The prosecution stated that the investigation included

---

[4] "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 37-38 (1993).

controlled purchases and multiple court-authorized wiretaps. (Tr. at 27-28.) The prosecution described the evidence against petitioner as follows:

> [T]he investigation here revealed that Alphonso Sloan obtained heroin from Good on a number of occasions. He was intercepted numerous times during the wire tap [sic] and during some of the intercepted calls Mr. Sloan, who went by the nickname of Sonny, discussed Michael Good's contact with Alphonso Sloan's brother, Gary Sloan, who is also a co-defendant in this case.
> 	Michael Good and Alphonso Sloan discussed the heroin that both brothers were obtaining through Michael Good. During one of the calls Michael Good explained that Alphonso Sloan should be obtaining his heroin from Michael Good as opposed to from Gary pointing out, "You can't make nothing off of him."
> 	Alphonso Sloan complained, "Not only that, he is taking the people that is coming to see me." The agents would testify that those are references to people [who] would come to Mr. Sloan to get heroin.
> 	On January 8, 2003, the agents intercepted calls between Alphonso Sloan and Michael Good and observed a drug deal. After Mr. Sloan took possession of the drugs the agents instructed Pittsburgh Police officers to conduct a vehicle stop.
> 	Mr. Alphonso Sloan led the police on a chase during which he threw a box out of his vehicle which the officers retrieved. The box was almost identical to the one that the agents had retrieved a few days before on January 3, and it likewise contained 15 bricks of heroin, that is 750 stamped bags of heroin that had the Sopranos logo stamped on them.
> 	Laboratory testing revealed that there was 34.8 grams of heroin, a Schedule I controlled substance.
> 	Mr. Sloan eventually was apprehended that day by police. The police found an additional 50 stamped bags of heroin that had the logo the Sopranos stamped on it. Those 50 stamped bags of heroin were found on the ground near his vehicle. 20 stamped bags of heroin were in the ceiling console of the vehicle and eight stamped bags of heroin were in his coat. At the time of the arrest Mr. Sloan had $264 in cash on him.
> 	Following his arrest that day Mr. Sloan's cell phone was left on him and while he was being transported to the police station he called Michael Good from the back of the police wagon and explained that he had just been arrested. Those calls were intercepted and recorded.
> 	Two days later Alphonso Sloan called Michael Good and explained his arrest in detail. Mr. Sloan explained that he did not know how the police focused on him stating he had been on his way to 31st Street to meet someone. When he noticed that the police were following him he tried to get away stating, "I can't get caught with this shit."
> 	He informed Michael Good that he was in the process of going across that bridge stating, "That's when I tossed the shit. I tossed it out the window."

>Mr. Good kept questioning Mr. Sloan about the reason the police focused on him. Alphonso Sloan maintained that he had not made any sales or transactions that would have focused police attention on him.

(Tr. at 29-32.)

At the conclusion of this summary, the court asked petitioner: "Mr. Sloan, do you agree with the prosecution's summary of what you did?" (Tr. at 33.) Petitioner responded: "Yes." The court then asked: "Do you still wish to plead guilty?" Id. Petitioner responded: "Yes, I do." Id. In light of applicable legal precedent concerning what constitutes grounds for a mitigating role adjustment, petitioner's acknowledged conduct places him squarely outside of the realm of a minor role adjustment. For example, petitioner acknowledged repeated not isolated incidents of behavior; petitioner acknowledged amounts of heroin and repeated incidents of dealing in it which indicate the importance of defendant's actions to the success of the venture; and petitioner acknowledged behavior showing considerable knowledge of the identities and roles of more than one of the other actors in the conspiracy as well as actions indicating his likely knowledge of the overall scope of the conspiracy. See Rodriguez, 342 F.3d at 301.

Petitioner, therefore, was not prejudiced by trial counsel's failure to make an argument on his behalf that he played a "minor role" in the criminal activity underlying his federal offense. There is not a reasonable probability that, but for counsel's failure to make an argument that petitioner played a minor role, the result of the proceeding would have been different. See Williams, 529 U.S. at 390-91; Strickland, 466 U.S. at 687-88, 694.

Petitioner has not shown prejudice based upon either of the asserted grounds of ineffective assistance. The court, therefore, does not need to reach the deficient representation prong of the ineffective assistance analysis. See McAleese, 1 F3d at 170; Strickland, 466 U.S. at

14

697. The motion and the files and records of the case conclusively show that petitioner is not entitled to relief based upon his ineffective assistance of counsel claims.

## B. Equal Protection and Due Process Claim

Petitioner also argues in his motion that trial counsel never consulted with him about the arguments he raises in his ineffective assistance of counsel claims and that this "thereby deprived him of constitutionally recognized civil rights protections and guarantees under the [Fourteenth] Amendment Equal Protection and Due Process clauses notwithstanding the [Sixth] Amendment right to have the assistance of counsel necessary for his defense at all critical stages of the proceeds [sic]."

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel and is analyzed pursuant to the framework set forth by the United States Supreme Court in Strickland and Williams, as discussed above. Petitioner does not make clear the factual grounds underlying his generic equal protection and due process claims other than the assertions discussed previously with respect to the ineffective assistance of counsel claims. Petitioner did not assert any allegations that support a showing that, in light of the alleged ineffective assistance, which this court has determined was not constitutionally defective, the proceedings were fundamentally unfair, in violation of the due process clause, or deprived him of equal protection of the law. Therefore, petitioner has not shown a denial of these rights that warrants relief pursuant to section 2255.

**IV. Certificate of Appealability**

When a district court issues a final order denying a section 2255 petition, the court must also make a determination as to whether a certificate of appealability ("COA") should issue or the clerk of the court of appeals shall remand the case to the district court for a prompt determination as to whether a certificate should issue.  See 3RD CIR. LOCAL APP. R. 22.2.  Based upon the motion and files and records of the case, and for the reasons set forth herein, the court finds that petitioner has not shown a substantial denial of a constitutional right.  Therefore, a COA should not issue.

**V. Order**

AND NOW, this 25th day of May, 2006, upon consideration of petitioner's motion and the government's brief in opposition, IT IS HEREBY ORDERED that petitioner's motion to vacate, set aside, or correct sentence by a person in federal custody pursuant to 28 U.S.C. § 2255 (Doc. No. 427) is DENIED.

IT IS FURTHER ORDERED that no certificate of appealability should issue.

By the court:

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

cc:  Alphonso Sloan
FS-6861
SCI Mahanoy
301 Morea Road
Frackville, PA 17932

Troy Rivetti
Assistant United States Attorney